537 P.2d 631

Shirley GAMESON and Beverly Gameson, husband and wife, Plaintiffs-Respondents,

v.

Alvin L. REMER and Angela Remer, husband and wife, Defendants-Appellants.

No. 11623.

Supreme Court of Idaho.

June 13, 1975.

Rehearing Denied July 24, 1975.

R. M. Whittier, Pocatello, for defendants-appellants.

D. James Manning, Pocatello, for plaintiffs-respondents.

DONALDSON, Justice.

Plaintiffs-respondents, Shirley Gameson and Beverly Gameson, brought suit against conterminous owners and occupants of land, defendants-appellants, Alvin Remer and Angela Remer, seeking to have a certain fence located between their respective residences declared a boundary line and to have title quieted in them. In the alternative, recovery of costs for reconstruction of the fence was sought.

The record indicates that dating from early 1964, Shirley and Beverly Gameson occupied the residence located on Lot 27, Block 1, Gateway Development Subdivision, Bannock County, Idaho, as tenants of predecessor-in-interest Ray Andrews. Andrews further owned Lots 28 and 29 of the above described Block and Subdivision. In March, 1964, Andrews and Gameson discussed the possible construction of a fence across Lot 28 (located immediately south of respondents' property). Construction was completed June, 1964—Andrews furnishing materials and Gameson providing labor.

For nearly two years the Gamesons occupied the premises as tenants. In January, 1966, they purchased the property from Andrews. Testimony indicated that it was their understanding they purchased the entire area enclosed by the fence, Lot 27 plus the North ½ Lot 28. However, the deed passing interest referred only to Lot 27. From the time of purchase to the time of trial, respondents treated the area enclosed within the fence as their own—planting shrubbery, maintaining and improving the lawn. During the same period, testimony indicated that similar use was made of the South ½ Lot 28 by the various occupants of Lot 29, located immediately south of Lot 28.

In late 1971, or early 1972, the Gamesons decided to reconstruct the fence. Such reconstruction was undertaken at considerable expense. In April, 1972, Ray Andrews transferred title to Alvin and Angela Remer purporting to pass all interest in Lots 28 and 29. A dispute over the location of the boundary precipitated this action. The Magistrate Division of the Sixth Judicial District, after trial, entered findings of fact, conclusions of law and judgment holding the fence to be the boundary between the two residences and determining that plaintiffs had adversely possessed the property in question, i. e. the North ½ Lot 28, Block 1, Gateway Development Subdivision, Bannock County, Idaho, the title to the land was quieted in plaintiffs. As a result, no finding or decision was made on plaintiffs' alternative theory of recovery for costs of reconstruction of the fence. Appeal was taken to the District Court of the Sixth Judicial District wherein the decision of the Magistrate Court was affirmed. The present appeal followed.

The appellants initially assign error to the trial court's finding the fence to be the boundary line between the respective residences in question.

The following testimony concerning original construction of the fence is contained in the record.

"Q [Jim Manning]: And did Mr. Andrews indicate where this fence would be located?

"A [Shirley Gameson]: Yes, he stated that he measured between these places and put stakes and told me to put the fence right there. That he was dividing the area [Lot 28] between these two houses equally so that it would be equal portions for each side [Lot 27 and 29].

"A [Shirley Gameson]: Mr. Andrews said, 'this portion here, there was five houses in this area, two of them had to be moved out because they were too close together and they wouldn't sell. He was going to do nothing with this piece of ground here [Lot 28] except make equal parts to these houses, giving this half to this house [Lot 27] and this half to that house [Lot 29]' and he measured out and he said, 'you put the fence right here.'"

The above discussion, coupled with the fact the land at issue lies within a recorded subdivision, clearly indicates that the true boundaries of Lot 28 were known. As such, we believe the trial court erred in its application of the doctrine of an agreed boundary line. That doctrine rests fundamentally upon uncertainty concerning location of true boundary. Hyde v. Lawson, 94 Idaho 886, 889, 499 P.2d 1242 (1972); Lisher v. Krasselt, 94 Idaho 513, 516, 492 P.2d 52 (1972); Fry v. Smith, 91 Idaho 740, 742, 430 P.2d 486 (1967); Downing v. Boehringer, 82 Idaho 52, 56, 349 P.2d 306 (1960). Where uncertainty exists, agreement binds the consenting parties. However, where the true boundary line is known, an oral agreement to fix another line is void. As stated in the case of Downing v. Boehringer, *supra*:

"Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds (I.C. §§ 9–505 and 55–601) and is invalid." 82 Idaho 56, 349 P.2d 308.

As before stated, the record clearly indicates that true boundaries were known and therefore application of the doctrine was incorrect.

We must next consider whether the trial court erred in finding use of the North ½ Lot 28 to be adverse to the interests of the appellants and their predecessor-in-interest, Ray Andrews.

The appellants argue that testimony set forth earlier in this opinion indicates an original permissive use. Since a permissive use cannot ripen into title absence a clear repudiation, the appellants contend the parcel of land in question was not adversely possessed. We agree.

In Pleasants v. Henry, 36 Idaho 728, 213 P. 565 (1923), the rule governing adverse possession was stated as follows:

"'All the authorities agree that, in order to bar the true owner of land from recovering it from an occupant in adverse possession and claiming ownership through the operation of the statute of limitation, the possession must have been, for the whole period prescribed by the statute, actual, open, visible, notorious, continuous, and hostile to the true owner's title and to the world at large.'" 36 Idaho 735, 213 P. 567

See also: Smith v. Smith, 95 Idaho 477, 483, 511 P.2d 294 (1973); Hamilton v. Village of McCall, 90 Idaho 253, 258, 409 P.2d 393 (1965); Flora v. Gusman, 76 Idaho 188, 193, 279 P.2d 1067 (1955); Hogan v. Blakney, 73 Idaho 274, 281, 251 P.2d 209 (1952). The essence of the doctrine lies in possession hostile to the claim of another. A cause of action must accrue to start the statute of limitation running, and normally only notice in the form of a clear, positive, unequivocal act will suffice.

The record indicates that the original agreement to construct a fence took place prior to purchase of Lot 27 while the respondents were still tenants. That agreement clearly established a right of permissive use in the respondents. Where an original entry is permissive and not ad-

verse, the statute of limitation will not begin to run against the true owner until the adverse claimant establishes exclusive right in himself. Such right can only be established through specific disclaimer of the original permissive use, or other acts so notorious that notice will be presumed. Smith v. Smith, *supra.*

The respondents argue that their acts of enclosure and cultivation are sufficient to establish title under I.C. §§ 5–209,[1] 5–210.[2] We disagree. In Lisher v. Krasselt, *supra,* and White v. Boydstun, 91 Idaho 615, 621, 428 P.2d 747 (1967), this Court held that meeting the requirements of those two statutes establishes in the possessor a presumption of title or grant. However, that presumption is rebuttable. As in the case at bar, manifested acts were sufficient to satisfy the notice requirements set forth in I.C. §§ 5–209 and 5–210. Those acts, however, fall short of the notice required to put a true owner on guard when faced with an initial permissive use. Knowledge of occupation is not the same as knowledge of adverse possession. Smith v. Smith, *supra.* Only an unequivo-

cal act by the permissive user brought home to the true owner will start the running of the statute of limitations. The record does not indicate such an act. Since the original permissive use had not been terminated prior to commencement of this action, hostile possession had not begun and therefore the claim of adverse possession fails.

We now must consider whether the respondents should be granted alternative relief in the form of costs for reconstruction of the fence. Neither the Magistrate Division of the District Court nor the District Court, in finding for respondents on their first claim for relief, entered any finding of fact concerning respondents' alternative theory of recovery for costs of reconstruction of the fence. We therefore remand the case to the District Court for such determination.

Reversed and remanded to the District Court for further proceedings in accordance with the views expressed herein.

Costs to appellants.

McQUADE, C. J., and McFADDEN, SHEPARD and BAKES, JJ., concur.

---

1. "5–209. Possession under oral claim of title.—Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

2. "5–210. Oral Claim—Possession defined—Payment of taxes.—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial inclosure.
2. Where it has been usually cultivated or improved.

Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."